### RUEDY ET AL. v. INTERNATIONAL TRADE EXHIBITION, INC.

___

(December 16, 1929.   Opinion and Decree.)
(January 13, 1930.   Rehearing Refused.)
(March 10, 1930.   Writ of Certiorari and Review Refused by Supreme Court.)

___

Paul A. Sompayrac, of New Orleans, and Anna McCay Ellis, of Amite, attorneys for plaintiffs, appellees.

Dart & Dart, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J.  Plaintiffs entered suit against defendant for the sum of $837 for commissions alleged to have been earned under a written contract which was subsequently modified by an oral agreement. The petition alleges that the written contract was entered into on October 7, 1925, and under the provisions of which plaintiffs were to be paid a salary of $50 each per week, and, in addition thereto, 15 per cent commission on the contract price of all exhibit space sold to whomsoever in the state of Louisiana; that on December 31, 1925, the said written contract was modified by mutual consent by a verbal agreement, whereby the plaintiffs were to be paid $100 per week as salary and 15 per cent commission on such contracts for exhibit space as plaintiffs had pending and which they themselves would bring in, but that plaintiffs were not to receive any commissions on such contracts brought in by Mr. Odenheimer and his committee; that under the said modified contract plaintiffs brought in contracts for space in the defendant's exhibition totaling 1,860 square feet, which, at $3 a square foot, amounted to $5,580, upon which they were to receive a commission of 15 per cent or $837; that under eight alleged contracts for space by different companies (the names of which are enumerated in the petition), 25 per cent of the year's rental was paid as required by the contract of October 7, 1925, and therefore there was due plaintiffs the amount claimed, with 5 per cent interest on the amount of the commission due them under the respective contracts from the respective dates on which payments of commission were due plaintiffs.

The defendant answered, admitting the signing of the contract of October 7, 1925, and its provisions, and also admitting the oral contract of December 3, 1925, modifying the original contract, and also its terms and provisions.  The answer also admits that the alleged eight contracts for space were obtained and the 25 per cent of the contract price required by the provisions of the contract of October 7, 1925, was paid, but denies liability on the ground that it was the intention of the parties, in entering into the oral contract modifying the original contract, to give plaintiffs an additional salary of $50 each per week more than they were receiving under the original contract of October 7th; that this increase in salary was to be in lieu of any commissions which plaintiffs might earn under the provisions of the original contract, excepting the commissions which

would be due plaintiffs on contracts that were pending on December 3, 1925, when the verbal agreement was entered into; that only two of the alleged eight contracts were pending on December 3, 1925, but that the other six were not pending, and that the plaintiffs should not receive any commission for these other six alleged contracts; and that, in the alternative, as the 25 per cent of the yearly rental did not accompany the contract for space at the time that these contracts were secured, that plaintiffs had not complied with the provision in their agreement requiring cash payment of 25 per. cent, and therefore defendant would not be liable except in one case, where the contract was so accompanied by 25 per cent of the yearly rental.

There was judgment in favor of plaintiff as prayed for, and defendant has appealed.

The record shows that defendant, International Trade Exhibition, Inc., employed plaintiffs for the purpose of securing contracts for space from those desiring to place exhibits on display.

The relevant part of the written contract of employment reads as follows:

"(1) Beginning Wednesday, October 7, 1925, you will be paid a salary of $50 per week each, payable at the end of each week. In addition, you will be paid 15% commission of the contract price of all space sold by whomsoever in the State of Louisiana. You will also have the privilege, with the written specific permission of the management in each instance, of closing space sales to firms outside of Louisiana. All commissions payable weekly on signed contracts accompanied by check for 25% of year's rental."

The pertinent part of the oral contract, modifying the written agreement, is as follows:

"Meeting Executive Committee.
"December 3, 1925, 4:30 p. m.

"* * * After considerable discussion of the matter, it was moved by Mr. Pfaff, seconded by Mr. Koch and unanimously approved, that during the time Mr. Odenheimer and his Committee are attempting to dispose of space to local manufacturers Messrs. Gueydan and Ruedy will be paid $100 per week, with commission of 15% on such contracts as they now have pending and which they themselves will bring in, but that they are not to receive any commission on such contracts as are brought in by Mr. Odenheimer and his Committee."

Both plaintiffs testify that the alleged eight contracts for space were secured by themselves and were pending on December 3, 1925, and that 25 per cent of a year's rental was paid to the defendant in connection with each of the eight alleged contracts; and that these contracts were not brought in by Mr. Odenheimer and his committee.

Defendant then undertook to rebut this testimony by two witnesses, W. A. Wittich, bookkeeper and second assistant treasurer of defendant corporation, and G. H. Deckert, its assistant secretary. Wittich was not able to testify of his own personal knowledge who had secured the alleged eight contracts, but testified with reference to his books concerning these eight alleged contracts, as to the dates they were secured and when the deposits were made. The application for the space in reference to these contracts were introduced into evidence.

Mr. Wittich admitted, on cross-examination that Mr. Ruedy, one of the plaintiffs, had dealt with salesmen and saw prospects about taking space in the exhibition.

Deckert testified that only one of the contracts was handed him physically by plaintiffs; the balance of the contracts came through the mail. But the witness could not say whether these contracts which

had come through the mail had been secured by plaintiffs.

We have therefore reached the conclusion that plaintiffs established a prima facie case and defendant has failed to rebut it.

Counsel for defendant contends that, under the provisions of the verbal agreement of December 3, 1927, plaintiffs were obliged to physically hand in the contracts after securing them. As the record shows that contracts were solicited from various concerns throughout this section, we do not think that such an interpretation was intended by the parties, and therefore, if plaintiffs secured contracts through the mail, it was a sufficient compliance with their agreement. Counsel for defendant likewise contends that the 25 per cent yearly rental did not accompany the contract, except in one instance, and that therefore plaintiffs have failed to comply with their contract. This was an alternative defense, and we see no merit in it, as the proof in the record shows that 25 per cent of the yearly rental was actually paid to the defendant corporation.

This case involves only questions of fact, and therefore falls under the jurisprudence to the effect that the judgment of a trial court will not be disturbed unless manifestly erroneous.

We note that the judgment of the district court is silent as to the date from which the 5 per cent interest per annum shall begin, and therefore amend the judgment so as to make the interest run from judicial demand.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be amended so as to allow 5 per cent interest per annum from judicial demand until paid, and, as thus amended, affirmed, at appellant's cost.